IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER JOHN MAYNE,<br><br>Defendant. | Case No. CR13-1017<br><br>ORDER FOR PRETRIAL DETENTION |

On the 17th day of October, 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial.[1] The Government was represented by Assistant United States Attorney Lisa C. Williams. The Defendant appeared personally and was represented by his attorney, John J. Bishop.

## I. RELEVANT FACTS AND PROCEEDINGS

On September 27, 2013, Defendant Christopher John Mayne was charged by Indictment (docket number 2) with attempted manufacture of methamphetamine (Count 1) and possession of pseudoephedrine to manufacture methamphetamine (Count 2). At the arraignment on September 30, 2013, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on December 2, 2013.

At the hearing, Lieutenant David Haupert of the Dubuque Police Department testified regarding the circumstances underlying the instant charges.[2] Regarding Count 1, during the early morning hours of December 4, 2012, Haupert was called regarding a suspicious structure fire on Garfield Avenue in Dubuque. Several hours later, firefighters

---

[1] Defendant waived his right to a hearing at the initial appearance, while reserving his right to ask for a hearing on a later date.

[2] Lieutenant Haupert is assigned to the Drug Task Force.

contacted Haupert and reported finding drug related materials. After proceeding to the scene, Haupert found a black garbage bag containing materials consistent with the manufacture of methamphetamine, including Coleman fuel cans and a 20-ounce bottle with a hose coming out the top. After obtaining a search warrant, officers searched further, but stopped for safety reasons.

When interviewed on December 4, 2012, Defendant told officers that he was sleeping on a couch in the basement when the fire started. Defendant opined that the fire may have been caused when a propane heater fell over. Defendant's subsequent insurance claim did not include a couch or a heater, however, and none was found in the basement.

Approximately one week later, officers returned to the scene, accompanied by fire officials and an investigator retained by Defendant's insurance company. More items consistent with the manufacture of methamphetamine were discovered. On December 19, the house was "dismantled" by a contractor retained by the insurance company, permitting law enforcement to search further and enter the basement. More items consistent with the manufacture of methamphetamine were found at that time. The investigator for the insurance company concluded that the fire was caused by a chemical reaction during the manufacture of methamphetamine.

Regarding Count 2, on March 23, 2013, a Dubuque County sheriff's deputy spotted a car parked near a remote storage facility. When the deputy investigated, he found Defendant and another individual in the car. The deputy saw material consistent with the manufacture of methamphetamine and called for a K-9 officer. The dog alerted on the car and a search warrant was obtained. Officers found material consistent with the manufacture of methamphetamine in the car and in a storage unit rented by Defendant, including 180 pills of pseudoephedrine. The person with Defendant at that time recently

admitted that she bought matches for Defendant to use in the manufacture of methamphetamine.[3]

When Defendant was recently arrested on the instant federal charges, he was found residing in a two-story house containing three apartments. Officers found a "bag of lab trash" in a common stairway, which included material consistent with the manufacture of methamphetamine.

According to the pretrial services report, Defendant is 33 years old. He was born in Dubuque and has lived there all of his life. Defendant has never been married, but has three children from a relationship Tiffany Leppert. Sherry Winch, a social worker with Iowa DHS, testified that following the fire in December 2012, Defendant, Leppert, and the three children were given a hair stat testing for drugs. Defendant and two of the children tested positive for amphetamine and methamphetamine. The children were removed from the home and are apparently still in foster care.

Defendant and Leppert recently purchased a home on Almond Street in Dubuque, where Leppert is now residing. Leppert told the pretrial services officer, however, that she wants no contact with Defendant and he is not welcome to live in their home. In fact, Ms. Winch testified that Leppert recently told her in a phone call that when Leppert told Defendant that she was "putting her kids first," Defendant became angry and threatened to burn the house down.

Defendant advised the pretrial services officer that he has been unemployed due to being incarcerated for the past two weeks, but believes he can return to his employment at Impact Cleaning in Dubuque. Ms. Winch testified that Impact Cleaning is operated by Nicole Pollard, who was residing in one of the other apartments in the building where

---

[3] Lieutenant Haupert testified that the striker pads on the matchbooks are used for red phosphorous in the manufacture of methamphetamine.

Defendant was recently arrested. However, Pollard is apparently now in custody as a result of a probation violation in state court.

Defendant is in good health and has no history of mental or emotional health concerns. Defendant told the pretrial services officer that his alcohol consumption has never been problematic, although he has an OWI pending in state court. Defendant claimed that he has not used marijuana since he was a teenager, but admitted starting using methamphetamine six years ago. According to Defendant, he used methamphetamine "off-and-on" for five years and has not used for the past year. Defendant submitted negative UAs in March and May 2013. A hair stat test in July 2013 was positive for amphetamine and methamphetamine. A UA in August 2013 was also positive for amphetamine and methamphetamine. Winch testified that she had requested additional drug tests from Defendant, which he refused.

In May 1999, Defendant was charged with a felony drug offense. While that charge was pending, he was charged and convicted of possession of alcohol under age. (It was Defendant's second conviction for that offense.) In June 2000, Defendant received a five-year suspended prison term on the drug charge. In June 2001, Defendant received six months in jail for a probation violation, although the pretrial services report is silent regarding the nature of the violation. In April 2002, while on probation for the drug charge, Defendant was charged and later convicted of assault. In September 2002, while still on probation and while the first assault charge was pending, Defendant was charged and later convicted of assault causing bodily injury. Six days later, Defendant was charged again with assault, but the third assault was dismissed when Defendant was sentenced on the first two assaults.

Meanwhile, in May 2002, Defendant received 20 days in jail for violating his probation in the drug charge. In October 2002, following his conviction on the two new assault charges, Defendant's probation on the drug charge was revoked and the five-year

prison was imposed. He was paroled in November 2003, after serving approximately one year.

In October 2004, Defendant was charged and later convicted of possession of drug paraphernalia. In November 2004, Defendant was charged and later convicted of knowingly damaging property. Both of these charges occurred while Defendant was on parole on the drug charge.

In January 2005, Defendant was charged with assault causing bodily injury. In February 2005, Defendant was charged with theft in the 4th degree. In March 2005, Defendant was charged with possession of drug paraphernalia and, four days later, charged with two counts of interference with official acts. In April 2005, Defendant was charged with possession/manufacture of methamphetamine. In May 2005, Defendant was charged with possession of a controlled substance as a precursor and, ten days later, charged with child endangerment. In July 2005, Defendant was charged with being a fugitive from justice. On September 12, 2005, Defendant was sentenced for assault causing bodily injury, interference with official acts, possession of controlled substance as a precursor, and child endangerment.

On May 10, 2008, while on probation, Defendant was charged and later convicted of public intoxication and disorderly conduct fighting or violent behavior. In July 2010, Defendant was charged with assault causing bodily injury. In January 2011, while the first assault charge was pending, Defendant was charged with domestic abuse assault-second offense. On March 4, 2011, while two assault charges were pending, Defendant was again charged with domestic abuse assault-second offense. On March 25, 2011, Defendant was sentenced on the two domestic abuse assault charges, with the assault causing bodily injury charge dismissed.

On December 16, 2012 — 12 days after the fire burned down Defendant's residence — he was charged and later convicted of disorderly conduct fighting or violent behavior.

5

On April 1, 2013, — after Defendant was arrested and released in state court for the events giving rise to Count 2 of the federal indictment — Defendant was charged with operating while intoxicated and possession of drug paraphernalia. Those charges are pending in state court.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized

involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for

which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with attempted manufacture of methamphetamine and possession of pseudoephedrine to manufacture methamphetamine. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, there is a rebuttable presumption that Defendant should be detained pending trial. The weight of the evidence against Defendant would appear to be strong. While Defendant has strong ties to the Dubuque community, he does not have stable employment, nor does he have a stable residence. Despite what he told the pretrial services officer, it appears that Defendant continues to use controlled substances. Defendant has a lengthy criminal record, including seven assault convictions. Defendant has also been convicted on multiple drug charges, interference with official acts, and child endangerment. Virtually all of Defendant's criminal activity occurred while he was on pretrial release, probation, or parole. That is, Defendant routinely fails to comply with

8

conditions of supervision. Defendant has been sanctioned for probation violation at least three times, including being sent to prison. The Court has no confidence that the Defendant would comply with any terms or conditions which it may impose for his release.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Defendant's oral motion for a detention hearing (October 9, 2013) to the filing of this Ruling (October 17, 2013) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 18th day of October, 2013.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA